UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

—————————————————————————————————————————————————

|  |  |
|---|---|
| | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) CASE NO. CR20-151 |
| | ) |
| Plaintiff, | ) Seattle, Washington |
| | ) |
| v. | ) February 11, 2022 |
| | ) 11:00 a.m. |
| ROHIT KADIMISETTY, | ) |
| | ) SENTENCING |
| Defendant. | ) |
| | ) |

—————————————————————————————————————————————————

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT JUDGE

—————————————————————————————————————————————————

**APPEARANCES:**


For the Plaintiff:          NICHOLAS ARNOLD MANHEIM
                            United States Attorney's Office
                            700 Stewart Street
                            Suite 5220
                            Seattle, WA 98101


For the Defendant:          KAM KOOSHKI
                            Whitbeck, Kooshki & Zreik, LLP
                            21515 Hawthorne Boulevard
                            Suite 1130
                            Torrance, CA 90503




Reported by:                MARCI E.C. CHATELAIN, CCR, RPR, RMR,
                            CRR, Federal Court Reporter
                            700 Stewart Street, Suite 17205
                            Seattle, WA 98101
                            marci_chatelain@wawd.uscourts.gov

1                          PROCEEDINGS
2        _____
3              THE CLERK:  Please rise.
4          The United States District Court for the Western District
5    of Washington is now in session, the Honorable Richard A. Jones
6    presiding.
7              THE COURT:  Good morning.
8          Please be seated.
9          Good morning.
10             THE CLERK:  We are here for sentencing in the matter
11   of the USA versus Rohit Kadimisetty, cause number CR20-151
12   assigned to this Court.
13         Would counsel and the probation officer please rise and
14   make your appearances for the record?
15             MR. MANHEIM:  Good morning, Your Honor.  Nicholas
16   Manheim for the United States.
17         Next to me at counsel table is FBI Special Agent Laurie
18   Diver.
19             THE COURT:  Good morning, both of you.
20         Please be seated.
21             MR. KOOSHKI:  Good morning, Your Honor.  Attorney Kam
22   Kooshki on behalf of the defendant, Rohit Kadimisetty.
23             THE COURT:  Good morning, both of you.
24             PROBATION OFFICER:  Good morning, Your Honor.  Amelia
25   Whaley on behalf of U.S. Probation.

1          THE COURT:  Good morning to you as well.

2      To begin with, the Court will require that you continue to

3  wear your masks unless you're speaking to the Court, then you're

4  free to remove your masks.

11:00:16  5      You're also permitted to remain at counsel table in the

6  interests of keeping everyone as safe as possible.

7      The Court will begin the sentencing proceeding by

8  identifying all the documents that I have received and reviewed.

9  And those documents include the following:  The presentence

11:00:33  10  report prepared by United States Probation Officer Amelia Whaley

11  and attachments, including the Victim Impact Statement; the

12  government's sentencing memorandum, and the defendant's

13  sentencing memorandum, and the Plea Agreement.

14      Counsel for the government, are you aware of any additional

11:00:50  15  documents that I did not state for the record?

16          MR. MANHEIM:  No, Your Honor.

17      When you say "the Victim Impact Statement," is that the

18  letter from the Amazon attorney?

19          THE COURT:  That's correct.

11:01:00  20          MR. MANHEIM:  Thank you, Your Honor.

21          THE COURT:  Ms. McNaughton.

22          MR. MANHEIM:  Yes.

23          THE COURT:  All right.

24      And counsel for the government, just to confirm, it's my

11:01:05  25  understanding that the government does not have any outstanding

1  objections regarding the presentence report that require

2  resolution by the Court.

3          MR. MANHEIM:  Correct, Your Honor.

4          THE COURT:  All right.  It's my understanding that

11:01:15  5  there were zero additions and there were clarifications and

6  those are already incorporated in the report; correct?

7          MR. MANHEIM:  Correct, Your Honor.

8          THE COURT:  And counsel for the defendant, are you

9  aware of any additional documents that I did not state for the

11:01:26  10  record?

11          MR. KOOSHKI:  From our side or from the --

12          THE COURT:  From any side.

13          MR. KOOSHKI:  From any side.

14      We filed our presentencing report.

11:01:38  15          THE COURT:  That's what I indicated, Counsel, the

16  defendant's sentencing memorandum.

17          MR. KOOSHKI:  Besides that -- yeah, besides that,

18  there's nothing else, Your Honor.

19          THE COURT:  All right.

11:01:45  20      And, Counsel, I trust that you've reviewed the presentence

21  report with your client?

22          MR. KOOSHKI:  I have, Your Honor.

23          THE COURT:  And, Counsel, I note that there is one

24  outstanding objection to the presentence report, and it's

11:01:57  25  regarding your objections to paragraphs 23, 36, and 43.

1    I'll give you my preliminary ruling, and I'll give you the

2    opportunity then to make additional argument if you wish to.

3    But, Counsel, I've had a chance to review that objection and I

4    agree with counsel for the government and probation after

11:02:15    5    reviewing the Plea Agreement, because the Plea Agreement

6    specifically on page 8 makes reference to your client's

7    admission to conduct, which is an admission to a statement of

8    facts which were agreed upon, and that indicates that the --

9    during the course of your client's involvement in the scheme was

11:02:37    10    approximately $100,000, that's the reason why the Court is

11    determining that that $100,000 reference is appropriate.  So I'm

12    overruling the objection, but I'll give you the opportunity to

13    make your record or any additional argument.  Do you wish to,

14    Counsel?

11:02:52    15        MR. KOOSHKI:  I do briefly, Your Honor, if I may.

16        THE COURT:  You may.

17    Pull the microphone closer to you.

18    And if you feel comfortable, you may remove your mask

19    during your statement.

11:02:59    20        MR. KOOSHKI:  Sure.

21    Your Honor, while we understand that our client did agree

22    to the $100,000 number in sum, and that's stated in the Plea

23    Agreement, as a side note, we would like to have the Court note

24    that in the entire bribery scheme, Mr. Kadimisetty personally

11:03:23    25    profited for less than $10,000 himself.  So -- and I think that

1    kind of plays an important role in the sentencing today.  But

2    based on the Plea Agreement, we did agree to the number of

3    $100,000 cumulatively as the act of all of the defendants'

4    actions and pecuniary damage that was assessed.

5    11:03:52    THE COURT:  All right.  So noted, Counsel.

6    Court's ruling will remain the same.

7    With that, Counsel, I trust that there are no additional

8    objections to the presentence report by the defense; correct?

9    MR. KOOSHKI:  That's correct, Your Honor.

10    11:04:04    THE COURT:  All right.  With that, I'll announce my

11    conclusions as to the appropriate criminal history as well as

12    the guideline calculations.  And for these, I'm using the 2018

13    guidelines manual.

14    For the offense of conspiracy to commit the violation of

15    11:04:20    the travel act, I begin by identifying the base offense level.

16    The guideline for a violation of Title 18, United States Code,

17    Section 1952(a)(3), is found at guideline section 2E1.2.  That

18    section provides a base offense level for that violation.

19    Under specific offense characteristics in accordance with

20    11:04:48    guideline section 2B4.1, the Court is to increase by eight

21    levels if the total payment was greater than $95,000, but less

22    than $150,000.

23    Here, according to the Plea Agreement, the bribery amount

24    was approximately, in total, $100,000.

25    11:05:08    There are no adjustments for victim's role in the offense

1    or obstruction of justice.  This gives us an adjusted offense

2    level subtotal of 16.

3          There are no Chapter 4 enhancements.

4          I'm satisfied that based on the communication provided to

11:05:24   5    the presentence officer, as well as what has been provided by

6    the defendant, and the timeliness of his plea, which has given

7    the government the opportunity to more efficiently utilize its

8    resources, that the defendant qualifies for a three-level

9    downward adjustment for acceptance of responsibility.  This

11:05:43  10    gives us a total offense level of 13.

11          The defendant has a criminal history category of 1.  The

12    imprisonment range is 12 to 18 months.  Supervised release range

13    of one to three years.  Probation, the defendant's not eligible.

14          The fine range is $5,500 to $55,000.

11:06:03  15          Counsel for the government, how do you wish to respond to

16    the Court's calculations?

17          MR. MANHEIM:  We agree with the Court's calculations,

18    Your Honor.

19          THE COURT:  Counsel for the defendant, subject to your

11:06:12  20    objection, how do you wish to respond to the Court's

21    calculations?

22          MR. KOOSHKI:  Your Honor, we agree and disagree in

23    part.

24          We believe that based on the overall -- again, the amount

11:06:21  25    of bribery that my client received was less than $10,000, and we

believe that that would give the defendant a downward turn from

the sentencing guidelines, along with the other circumstances,

his history, the characteristics, and Mr. Kadimisetty's care and

support for his elderly parents, which we believe would give him

11:06:48    an opportunity to have a downward calculation of the sentencing

guidelines below 13.

THE COURT:  All right.  Counsel, your request is

noted, but it's overruled.  The guideline calculations will

remain the same as indicated by the Court, but I'll certainly

11:07:08    give you the opportunity to make your recommendation to the

Court as to the proper sentence.

We'll proceed in the following fashion:  First I'll hear

from counsel for the government, then I'll hear from probation

to see if the probation officer wishes to supplement or add to

11:07:23    the recommendation, then I'll hear from defense counsel, and the

defendant will be the last person to address the Court.

Counsel for the government, your recommendation.

MR. MANHEIM:  Thank you, Your Honor.

Your Honor, with your permission, I'll remain seated so

11:07:37    that I'm near the microphone.

THE COURT:  That's fine.

MR. MANHEIM:  Your Honor, shopping online has become a

part of our daily lives.  Indeed, for many over the last two

years, going online to shop might have become even more common

11:07:48    than actually stepping into a store.  And many go to online

1  vendors to get information to read about products, research

2  sellers, and make purchases, often by giving private

3  information, their names, addresses, and credit card

4  information.

5      These shoppers rely on the information they find online and

6  over time they trust that certain sellers, products are what

7  they say they are.  And they trust that companies that they buy

8  from will keep their information safe.

9      The defendant and his co-conspirators corrupted others and

10 bribed them to break that trust, paying employees to steal

11 information about customers, help unscrupulous businesses

12 continue to sell online, and perpetuate false information.  They

13 did so on one of the largest shopping platforms, the Amazon

14 Marketplace.

15     Millions of users from around the world conduct billions of

16 dollars of business on that marketplace.  It offers millions of

17 products to shoppers and provides them with information about

18 the products, their dimensions, their qualities, their prices,

19 provides them with photographs and information about sellers as

20 well as reviews from previous customers.

21     And shoppers can buy not only from Amazon itself, but from

22 third-party sellers, which are commonly small businesses trying

23 to grow and expand by using the popular Amazon worldwide

24 platform.

25     And to operate this enormous marketplace, Amazon collects

1    information from customers and third-party sellers to help them

2    make choices about what to buy and how to sell.  And it uses

3    complex processes and algorithms to help in that process as well

4    as common sense rules in its efforts to create a fair and

11:09:41    5    reliable market that will continue to attract customers and

6    sellers.

7            Around these third-party sellers has arisen another large

8    market, a market of consultants, individuals and companies who

9    purport to help third-party sellers increase sales, compete with

11:10:03    10    other sellers, and work out issues with Amazon itself.  While

11    many consultants likely follow Amazon's rules and provide

12    helpful information, some pursue black-hat tactics, stealing,

13    cheating, and attacking competitors.

14            The defendant and his co-conspirators were just such

11:10:26    15    consultants.  They worked together to steal from Amazon, gain

16    unauthorized access to its systems, and manipulate the Amazon

17    Marketplace, all to give certain sellers an unfair competitive

18    advantage while lining their own pockets.  They barraged Amazon

19    third-party sellers and customers with all manner of attacks.

11:10:47    20    They stole Amazon's proprietary information, stole information

21    about competing third-party sellers, stole information about

22    customers; fraudulently reinstated suspended sellers, reinstated

23    suspended products; fraudulently attacked other sellers;

24    manipulated reviews; gave their clients extra privileges to

11:11:11    25    store and sell products, and stole directly from Amazon by

approving false reimbursement requests.  And they did all of this through bribes and fraud.

From his computer in California, the defendant connected his friends and former colleagues at Amazon in India with his co-conspirators in the United States.  And he acted as a middleman, helping to coordinate the attacks and the theft of information at Amazon between the co-conspirators in the United States and those in India.

He helped to bribe those Amazon employees to betray the trust of their employer, Amazon, betray the trust of Amazon's partners, and Amazon's customers.

In a world where more and more of our shopping is done online, bribing employees of online selling platforms to steal important information and undermine services must have serious consequences.

And we recommend that the Court sentence the defendant to 15 months of imprisonment, followed by three years of supervised release, and impose a fine of $50,000.

Now, we have -- the government has laid out its position in detail in its filed sentencing memorandum, but I would like to touch on three particular things:  First, the defendant's role; second, the need for a just punishment; and third, the need for deterrents.

First, the defendant played a substantial role in this conspiracy.  He was one of its first members, being the person

who connected the Amazon insiders in India to the U.S.-based

consultants.  And he participated in the conspiracy for a long

period of time, from early 2017 to approximately August or

September of 2018.

     And he was an active participant, taking orders, following

up with Amazon employees who were stealing information, working

out prices for that information, and coordinating bribe

payments.

     To his credit, the defendant did leave the conspiracy

earlier than his co-defendants when Amazon fired a number of the

Amazon employees in late 2018.

     But that is not to say that the defendant only learned that

what he was doing was wrong when those employees were fired.

The defendant knew that he was breaking the rules throughout the

conspiracy.  As he admitted in his Plea Agreement, he knowingly

and willfully conspired with others to bribe Amazon employees,

and the evidence supports that.  He exchanged WhatsApp messages

with a corrupt Amazon employee about hiding their activity from

others in the office who might be able to see what was

happening.  He exchanged other messages with Amazon employees

about employees who had been disciplined and how their own

activity was risky.  And he used covert methods to communicate,

end-to-end encrypted communications, deceptive e-mail addresses,

and arranged payments, bribe payments, through third parties to

hide the true nature of those payments.

1    The defendant did all of this not because he suffered from

2    mental health or substance abuse problems, not because he was

3    desperate for money, or came from an abusive family or one that

4    didn't provide him with guidance; indeed, the defendant had a

5    supportive family, a good education, solid work history, and

6    promising prospects.  Why did he do this?  Quite simply, greed.

7    And the government has concerns that the defendant might

8    return to criminal conduct.  He was not fully forthright with

9    the probation office about his association with his current

10   employer and the fact that he had worked for that employer

11   before, nor did he disclose that that current employer had been

12   involved in a scheme similar to the one at issue in this case, a

13   bribery scheme that the defendant fully knew about and

14   communicated with Amazon insiders about.  Nonetheless, he did

15   not communicate that or explain that to the probation office.

16   And the defendant has also minimized his culpability here

17   by expanding on the fact that he believes he's been helpful to

18   the government.  There's an allegation in the defendant's

19   sentencing memorandum that he's cooperating with the government.

20   That is not the case.  The defendant has not signed a

21   cooperation agreement with the government.  He did attempt to

22   provide a proffer, but the government had to cut it off when the

23   defendant was simply persisting in being untruthful.

24   The defendant's post-plea efforts to minimize his

25   involvement and culpability raise considerable concerns for the

1   government.  And in -- when combined with his intention to

2   return to India where he'll be able to associate with others who

3   he engaged in this criminal conduct with without the oversight

4   of the probation office, that raises additional concerns for the

11:16:27   5   government.

6       The defendant had a key role in the conspiracy.  And while

7   he left it early, his recent attempts to minimize his

8   involvement and avoid responsibility caused the government

9   considerable pause.

11:16:42   10       Turning to just punishment, the recommended sentence would

11   provide just punishment in this case.  The defendant and his

12   co-conspirators have caused incalculable harm both to Amazon as

13   well as its third-party sellers and its customers.  From Amazon,

14   they stole confidential information that Amazon spent untold

11:17:04   15   sums developing, refining, and protecting.  Algorithms related

16   to Amazon search functions review prioritization and featured

17   seller programs, as well as documents related to Amazon's

18   internal procedures and internal deliberations about suspending

19   accounts and reinstating accounts.

11:17:27   20       They also caused Amazon to directly pay out money to the

21   co-conspirators by submitting and approving false reimbursement

22   requests for allegedly missing product that was not actually

23   missing.

24       And their efforts to cheat and manipulate on the Amazon

11:17:46   25   Marketplace have undermined confidence in Amazon's business.

1   This has caused further incalculable harm.

2       The defendant's co-conspirators also hurt third-party

3   sellers, primary small businesses that use the Amazon

4   Marketplace to grow and expand.  They stole their information

11:18:04   5   and provided it to competitors to give them an unfair advantage.

6       They also helped online sellers review manipulations to

7   help them compete against honest third-party sellers.  And they

8   even attacked other third-party sellers, sending false

9   information about their -- the third-party sellers to Amazon and

11:18:30   10   defacing the third-party sellers' products and web pages.

11       They also have harmed customers by stealing customer

12   identifying information, including e-mail addresses that the

13   third-party consult -- that the third-party sellers working with

14   the defendant and his co-conspirators could use to harass and

11:18:53   15   manipulate reviews on the Amazon Marketplace.

16       It is impossible to quantify the harm that the defendant

17   and his co-conspirators have done.  And the defendant has

18   received a substantial benefit by being allowed to agree to only

19   $100,000 in bribes in this case.  The guidelines range could

11:19:14   20   have been calculated in different ways, as it might be for some

21   of the co-defendants who, in the government's view, are more

22   culpable.  And the government agreed to these benefits for the

23   defendant in light of his relative culpability.  But this

24   guidelines range underestimates the actual harm that the

11:19:34   25   defendant has done.  The defendant's guideline range reflects a

1    number of decisions in his favor, but we should not lose sight

2    of that harm.

3         Your Honor, the government's recommendation provides for a

4    just punishment in light of the incalculable damage done by the

11:19:49    5    defendant and his relative culpability.

6         Turning finally to deterrents, the recommended sentence

7    will not only help to deter the defendant from committing future

8    crimes like this, but, also, hopefully, will help to deter

9    others.

11:20:05    10         Now, in criminal law, general deterrents is often invoked

11    and almost as often disregarded.  But in some cases, the need to

12    consider general deterrents is real and compelling and this is

13    one of those cases.

14         This case relates to a specific community of Amazon

11:20:25    15    employees, sellers, and consultants that is well aware of this

16    case and the conduct at issue.  And some of those members of

17    that community are engaged in similar conduct or think that they

18    can get away with it or walk away with only a slap on the wrist.

19    The result here will resonate through that community, and the

11:20:46    20    recommended punishment will send the message that these

21    black-hat sellers, black-hat tactics, bribing, stealing,

22    cheating, attacking, will not be condoned.

23         This case has received considerable attention in the press,

24    and those accounts show that Amazon sellers and consultants are

11:21:06    25    paying attention.  And many in that community have succumbed to

the twisted mindset described by co-defendant Ed Rosenberg in a post-indictment interview.  As he explained, many feel that they have to cheat to get ahead, and that if they cheat, they likely won't get caught, so they pursue conduct like the crimes at issue here.

The recommended sentence would help to break that cycle and convince Amazon sellers and consultants that bribing, stealing, and cheating will be met with serious consequences.

Your Honor, the defendant played a key role that did tremendous harm, and the government recommends that the Court sentence the defendant to 15 months of imprisonment, followed by three years of supervised release, and impose a $50,000 fine.

Thank you, Your Honor.

THE COURT:  Thank you, Counsel.

Ms. Whaley, do you have any additional input that you'd like to share with the Court?

PROBATION OFFICER:  Your Honor, I have nothing to add, unless you have any questions for me.

THE COURT:  I have no additional questions.

PROBATION OFFICER:  Thank you.

THE COURT:  Counsel?

MR. KOOSHKI:  Your Honor, as Mr. Kadimisetty has stated in our presentencing memo, he cannot fully explain his lapse in judgment because he did not put a great deal of thought into his actions and was manipulated and exploited by the other

1    co-defendants.

2         Unlike the other co-defendants, who are still fighting and

3    challenging the case, our client, Mr. Kadimisetty, came to terms

4    with what he had done wrong and entered into this Plea

5    Agreement.

6         The evidence demonstrates that at the time of the offense,

7    he was experiencing some emotional instability and extreme

8    ignorance of the law.  This is very important, extreme ignorance

9    of the law.  Why is that?  Mr. Kadimisetty is a new immigrant

10   from India to the United States and is not familiar with the

11   laws of the United States.  While that is not an excuse,

12   ignorance of law is never an excuse, Mr. Kadimisetty did realize

13   that his actions were not right and voluntarily made decisions

14   to remove himself from the scheme and to avoid any further

15   communication with the other co-defendants.  And since his

16   removal from the scheme, he's had no communication and no

17   interactions with any of the defendants.

18        When communicating with Mr. Kadimisetty, he placed a great

19   deal of emphasis on his lack of knowledge for the law and how

20   easily it was for the co-defendants to exploit and manipulate

21   him because he was a new immigrant to the United States with

22   very limited financial means.

23        Mr. Kadimisetty has led a very problem-free life.  And

24   apart from the instant offense, Mr. Kadimisetty has been a

25   law-abiding and productive citizen.

1    Mr. Kadimisetty has been honest, kind, generous with his

2  friends and family, and he's a modest person who lives a modest

3  lifestyle.  His lapse of judgment that led to the instant

4  offense does not accurately represent his true character.

5    Mr. Kadimisetty deserves a second chance to prove his full

6  potential and true extent of his character.

7    Mr. Kadimisetty is the major supporter of his elderly

8  parents in India, who both suffer from medical problems and are

9  financially dependent for monetary support from Mr. Kadimisetty

10  to handle their day-to-day financial affairs in India.  Mr.

11  Kadimisetty is working full time at Hawthorne Distribution and

12  sends money back home to support his parents in India.

13    If Mr. Kadimisetty is incarcerated, there would no doubt be

14  -- there would no doubt be both financial and emotional

15  suffering for his parents.

16    From the onset of this matter, unlike the other

17  co-defendants, Mr. Kadimisetty immediately implicated himself

18  and admitted that he had committed the crimes.  The Defendant

19  Kadimisetty expressed that he was very sorry and that he was

20  extremely ignorant about the laws of the United States, and that

21  he was not aware of what he was doing would constitute a crime.

22  To make things right, defendant immediately admitted his guilt

23  to the Court at the very early stages of the proceedings.

24  Furthermore, defendant was extremely cooperative and humble.

25  Additionally, if need be, defendant is willing to cooperate with

1    the government against the other co-defendants.

2        Mr. Kadimisetty has also recognized the full extent of his

3    mistakes and unwise actions.  Mr. Kadimisetty realized the

4    immense impact of his wrongful acts upon himself, his family,

5    and the shopping Amazon community.

6        Mr. Kadimisetty does not minimize his unwise actions, and

7    he is willing to serve a just punishment for his ignorant and

8    unwise decisions.  Mr. Kadimisetty is ashamed and sorry not only

9    for what he has done, but also for the embarrassment he has

10    caused his family and the community.

11        Mr. Kadimisetty has no prior criminal history and is an

12    outstanding citizen in his community.  He has been hardworking

13    and a gainfully employed man his entire life.

14        When Mr. Kadimisetty is not working, he allocates the rest

15    of his time to attend to the day-to-day activities of the

16    household and attends the local Hindu temple to meditate and

17    reflect on his life and future.

18        Mr. Kadimisetty is an individual who has high standards and

19    is proud to live in America and be an American.  He considers

20    himself as an American and believes in the American values and

21    standards.  Mr. Kadimisetty intends to do his best to repay his

22    debt to the government and to society.

23        Mr. Kadimisetty believes that people in his situation

24    should be given a second chance to make things right.  Mr.

25    Kadimisetty is also a very spiritual person and has asked for

forgiveness from the powers above.  Mr. Kadimisetty is not proud
of what he's done and feels unwise about his past actions.

Mr. Kadimisetty pursued -- intends on pursuing his dream of
becoming an e-commerce manager and plans one day to fulfill his
dream of creating his own e-commerce start-up company.

Mr. Kadimisetty has great credit and is a very financially
responsible person in society.

Mr. Kadimisetty is a humble man that lives a very simple
and modest life.

Mr. Kadimisetty believes in the American dream of being
able to work hard to better his life.

Defendant is not dependent on government assistance and
desires to earn an honest living by working as an e-commerce
manager.

Mr. Kadimisetty's time would be much better spent working
under home detention than behind prison bars.

If incarcerated -- if incarceration is imposed by the
Court, Mr. Kadimisetty's health would be at risk due to his
dietary restrictions as a vegan and potential exposure to
COVID-19 in the federal prison system.

Serving a greater sentence not only delays the repay --
serving a great sentence not only delays the repayment of
restitution to the government, but also incurs further costs for
the taxpayers.

Based upon the total level of 13, offense level of 13, and

1    a criminal history of Category I, the guidelines impose a range

2    of 12 to 18 months.  Since the applicable guideline range is in

3    Zone C of the sentencing table, the minimum term may be

4    satisfied by, one, a sentence of imprisonment; or, two, a

5    sentence of imprisonment that includes a term of supervised

6    release with the condition that substitutes community

7    confinement or home detention.  According to the subsection --

8    schedule in subsection (e), it provides that at least one-half

9    of the minimum term is satisfied by imprisonment.  As such, the

10   Court sentence the defendant to less than a year in jail

11   followed by five years of supervision.

12        If the Court is disinclined to impose a sentence of

13   probation, defense respectfully requests the Court to consider a

14   downward departure of four -- of two to four levels of

15   extraordinary family circumstances above, an additional downward

16   departure, as the Court sees fit.

17        In the alternative, it is important to note, again, and

18   take into consideration that defendant only benefited less than

19   $10,000 from this entire bribery scheme.  His actions were not

20   based on greed, his actions were based on stupidity and

21   ignorance of the law and being an immigrant to this new country.

22        Based on this $10,000 bribery benefit, defendant would be

23   placed in Zone B of the guidelines, instead of Zone C of the

24   guidelines.  Zone B allows the Court to consider probation and

25   home confinement instead of imprisonment under Zone C.  We're

1  asking the Court to give great weight to this issue when

2  considering defendant's punishment.

3       The defendant is neither a violent man nor a hardened

4  criminal.  In fact, Mr. Kadimisetty immediately confessed to his

5  wrongdoing and cooperated with authorities at the inception of

6  the investigation.  Defendant is proud -- is a proud American

7  that believes in second chances to make things right.

8       Defendant intends on repaying his debt to the government

9  and must not be imprisoned for a very lengthy period.  As such,

10  defendant respectfully requests to be sentenced to a time of

11  probation or significantly less period than what the United

12  States Probation officer and the United States Attorney's Office

13  have recommended.

14       Further, defendant is willing to serve under house arrest

15  and conduct extended hours of community service as an

16  alternative to prison.

17       Defendant is also willing to serve a hybrid of time in a

18  halfway house and an arrest, which will allow defendant to keep

19  employment to support himself, his family, and pay restitution.

20       Defendant respectfully asks the Court to recommend home

21  detention for all or part of his sentence.  Home detention will

22  allow defendant to serve his time for the crime and

23  simultaneously be able to work, again, to financially assist his

24  elderly parents back in India with their day-to-day activities

25  and financial needs.

1    In sum, based on the foregoing above, defense respectfully

2    requests the Court to consider extended home detention.  And if

3    the Court is adverse to impose a sentence of home detention,

4    defendant respectfully requests the Court to consider a hybrid

11:32:21    5    of a period spent in a halfway house and probation.

6    Due to the defendant's exigent family situation, defendant

7    requests a downward departure of two to four levels and any

8    other downward departures as the Court deems fit.

9    In sum, Mr. Kadimisetty is not a hardened criminal.  He's

11:32:45    10   not greedy.  Unfortunately, he got tied up with the wrong group

11   of people and made poor decisions and is here before the Court

12   today, unlike the other co-defendants, to ask for mercy and

13   forgiveness from the Court.

14   Thank you, Your Honor.

11:33:06    15       THE COURT:  Thank you, Counsel.

16   Mr. Kadimisetty, your lawyer has spoken on your behalf,

17   he's filed written materials on your behalf, all of which I have

18   read.

19   Sir, you're not required to say anything, and your silence

11:33:19    20   will not be held against you; however, you do have the

21   opportunity, if you wish, to share any thoughts that you'd like

22   this Court to consider before I impose sentence.

23   Mr. Kadimisetty.

24       THE DEFENDANT:  Yes, Your Honor.

11:33:31    25       THE COURT:  Please speak into the microphone.

1          You may be seated, sir.

2              THE DEFENDANT:  Good morning, Your Honor.

3          Thank you for giving me the opportunity to be in this

4      courtroom, allowing me to attend this session in person amidst

11:33:50    5      the pandemic.

6          Today is the most important day of my life, and I wanted to

7      be here in person to show you who I really am and for you to see

8      me as a person behind what the documents speak.

9          Today I promise to be an open book in front of you.  I

11:34:06    10      don't want to hide anything, I don't want to make any excuses,

11      and I want to be as transparent as I can.

12          Your Honor, I've always been a person who has lived a life

13      with positive attitude.  I've always been curious, to question

14      things around me, and extremely driven to do the right things.

11:34:25    15          I call myself a dreamer, and I've always worked hard to

16      achieve those dreams.  I'm passionate about learning and getting

17      better, and I'm a lot more things, but what I am not is I'm not

18      a cheater, I'm not greedy, and I'm not cunning to take advantage

19      of others for my selfish gains, and certainly not daring enough

11:34:46    20      to consciously commit anything at all.

21          Had I taken the path -- had I not taken the path I did, I

22      see myself doing good for the community, traveling around the

23      world, and inspiring young minds to dream big, but, instead, I'm

24      here today and living through my darkest days.

11:35:05    25          Your Honor, I'd like to share a few things about my life to

1    help you see the Rohit Kadimisetty beyond these mistakes.

2        Growing up as a kid from an Indian background, we're taught

3    to dream big, but not big enough to fall.  I'm the first person

4    in my family to emigrate and to have come this far, but I'm also

11:35:26    5    the first person from my family to have stepped into a

6    courtroom.

7        My parents always encouraged me to dream big, but also

8    reminded me several times to be careful and mindful at every

9    step.  And I've carried those lessons with me in this life.

11:35:41    10        I've always looked for land mines before stepping into a

11    field, but as my fate had other plans for me, I got blindsided

12    by my own intelligence and failed to look at the land mines

13    which blew up my life, dragging my family into it.

14        I want to be honest with you, I've never been scared in

11:36:00    15    life until today.  My father taught me always to be humble and

16    fearless, but please believe me when I say this, when all of

17    this was happening, a 27-year-old man turned into a

18    five-year-old terrified kid, not knowing what to do, and not

19    knowing who to go to.

11:36:18    20        In the last two years, I've been companions with constant

21    fear and anxiety and the thoughts of losing my life and career

22    because of all the pain.  Realizing the intensity of the

23    situation that unfolded, my fears turned into pain and I punish

24    myself every single day for allowing myself to slip into this.

11:36:45    25    I understand the damage caused by my actions, and I take full

accountability of it.  And if my words mean anything, I'd like to sincerely apologize to Amazon for involving myself in a scheme of things that impacted them or other parties associated.

Amazon is a company that shaped my professional career and introduced me to some great leaders.  I got to learn so much during my tenure at Amazon, and I'll always be proud to have been associated with them.  But I'm certainly sure that Amazon is not proud of calling me as their ex-employee and have not given them any reason to do so.

I'm usually an individual who thinks twice and tries to analyze a situation before I get into anything.  I terribly failed to judge certain things that have let me stand here today.

In 2017, I was a 23-year-old immigrant who knew nothing about this country or who haven't met any Americans at that point of time.  And at that point, one of the co-defendants reached out to me on LinkedIn and I expected nothing but a professional relationship with them.  And over the course of period [sic], the relationship stayed as such, but I got manipulated and I was told certain things that made me believe that I was not doing wrong.  I was repeatedly told that I was helping small sellers and I was being helpful for people who were on the verge of losing their businesses, and I just believed and I helped the co-defendants.

And in mid-2018, a series of events occurred which were out

of my control and which led me to do certain things I'm not very proud of.

I would have not been involved in it if I knew the full scope of, or if I had the basic understanding of law.  Things happened so quickly that before I could realize, I was caught up in the middle of a mess.

I'm ashamed of myself for being ignorant of law and for getting myself manipulated and for believing that my actions were not wrong.

After I realized what was wrong, I voluntarily stepped away from the scheme and everyone involved in it, promising myself to never return to their world of deception and fraud.  I moved away knowing that this isn't how I wanted to build my life.

Even after moving on, the co-defendants continued to reach out to me, asked me to contribute to their ill practices.  But having known their real motives, I not only stepped away from everyone, but also tried to save another friend who was being pulled into their scheme of unlawful practices.  I made him realize this sooner and help him choose a different direction to rebuild his life again as I was looking to do so.

Since I couldn't undo the past, I started focusing on what was at my hand, and I started focusing on my future.  I poured my heart and soul into everything I did.  I reached out to my close friends about -- close friends and told them about it only in the hope to fully accept what I did and to desperately clear

1  my conscience.  I started working harder than ever, focused all

2  my energy into supporting myself and CC Wellness, the

3  organization I was part of, seek mentors, and tried involving

4  myself in multiple projects to upscale myself.  And as a result

11:40:16  5  of which, I was promoted twice for the contributions I made for

6  the organization.

7        Your Honor, even in the hardest times, I never relied on

8  alcohol or any substances, I solely relied on my own strength

9  and the love and support from my loved ones and surrendered

11:40:32  10  myself to the higher power to guide me and help me walk in the

11  right direction.

12        Ever since the indictment has been brought, I've complied

13  with every rule set by the probation office, including being on

14  location monitoring and not using any computer devices, and also

11:40:47  15  by showing my responsibility of the trust the Court has put in

16  me by allowing me to be removed from location monitoring.

17        I wanted to accept responsibility of my conduct in the very

18  early stages, ensuring that I was not wasting any of the

19  government's time or resources.

11:41:06  20        I'm hoping that the Court recognizes my proactiveness in

21  correcting myself, and as I stepped away from everything as soon

22  as I realized I was heading down the wrong path.  And this was

23  at least two years before the law enforcement stepped in.  And

24  since then, I only worked on improving myself, promising to

11:41:25  25  never walk the path that once I did.

1        I only hope that today my mistakes do not define who I am,

2    but everything I did after my mistakes shows me -- shows the

3    true character of who I am.

4        Your Honor, I want the Court to know that the Rohit

11:41:48  5    Kadimisetty sitting here today is not the Rohit who committed

6    these mistakes.  The Rohit here is more mature, more wiser, and

7    has a better understanding of things to know the difference

8    between what is right and what is wrong.

9        I request the Court to see the scenario as an individual

11:42:05 10    who was dumb, who did not know what exactly he was doing, who

11    owned up to his mistakes and stepped away from everything before

12    the law enforcement entered, and an individual who is filled

13    with remorse and has suffered a lot of pain and seen everyone in

14    his family suffer because of him and his ill -- grave mistakes,

11:42:24 15    an individual who is here today and taking responsibility for

16    his mistakes, to have learned the lesson and never to repeat

17    such a mistake in this lifetime.

18        Your Honor, my parents throughout their life put my needs

19    and happiness before their own.  They worked extremely hard to

11:42:44 20    provide me the life I have today.  And now that they are

21    retired, I had hoped to provide comfort and happiness to them,

22    but, instead, I'm giving them a lot of pain and suffering, and

23    that is the biggest punishment.  The dishonor that I have

24    brought to my family because of the mistakes and all the media

11:42:59 25    attention associated with this case has been very painful, and

1    all of this will be a scar for my life.

2        My only hope right now is to be able to written [sic] to my

3    family the first instance I'm allowed to.  As of today, I'm a

4    man completely self-aware of the mistakes I made.  I'm extremely

11:43:18    5    remorseful, and I'm pleading for mercy and forgiveness.

6        I understand that I violated certain laws and need to be

7    justly punished for violating those laws, but I also know that I

8    will never repeat these mistakes or do anything that is

9    unlawful.

11:43:30    10        I believe I made an effort to showcase my true character by

11    stepping away voluntarily when life gave me a chance.  If there

12    is any possibility and if the law allows for it, I would like to

13    request the Court to consider an alternate mode of punishment in

14    the form of home confinement, probation, along with fine, and

11:43:50    15    stringent community service as an opportunity for me to serve

16    back the community.

17        In case of jail sentence, Your Honor, the life I created

18    for myself with sheer hard work and sincerity will come

19    crumbling down and the opportunities of providing a better life

11:44:08    20    for myself and my family will no longer exist.

21        As a kid, I grew up dreaming about moving out of India,

22    coming to America, and living an American dream.  I wouldn't do

23    anything consciously that would take me away from my dream

24    because, as far as I know, for more than half of my life, I've

11:44:32    25    dreamed to be in this country and I've dreamed to do -- to be as

1  successful as I can, but it was pure stupidity and I couldn't --

2  I didn't know what I was doing.  I was completely lost and I

3  just believed in what I was being told.

4      I'm not a career criminal and I have never been and never

11:44:56  5  will be.  I can assure you with my whole heart that I will never

6  do anything that is unlawful or against my moral values.

7      I'm in my late 20s and I have a beautiful life ahead of me

8  with my parents and loved ones, and I'm willing to do anything

9  to not have that taken away from me.  I'm hoping to make my

11:45:17  10  mother proud again who always believed that I make -- that I

11  could make a positive difference in this world.

12      I promise that this will be the last time I will be in any

13  courtroom for misconduct.

14      I want to let the Court know that I made a poor decision in

11:45:33  15  the past, got involved with the wrong people, not knowing the

16  consequences of my action, and today I'm pleading for mercy and

17  forgiveness from the Court.

18      As I stated in the beginning of my speech, I'm a dreamer

19  and my dream is to give -- to be given a second chance to

11:45:47  20  fulfill my desire to live the American dream.  Your Honor, all I

21  beg for is one chance to prove that I've changed for the better.

22      Thank you, Your Honor.

23      THE COURT:  Thank you, Mr. Kadimisetty.

24      The Court has heard from all parties.  And this Court is

11:46:06  25  mandated to calculate an appropriate guideline range, and I've

1   done that.

2       Then the Court has the responsibility of looking at and

3   considering any departures or variances that might be applicable

4   in view of the facts and circumstances.

11:46:19  5       The Court also has a responsibility to look at and consider

6   all the Section 3553(a) factors of the sentencing guidelines.

7   It's my practice to go through those factors so that you

8   understand how the Court arrived at the sentence that I will

9   impose.

11:46:34  10      So I begin, sir, first with your history and

11  characteristics.  The obvious mitigating factor is that you

12  don't have any prior criminal history.  And other than the

13  circumstances of this case, it appears that you've been a

14  law-abiding citizen while you've been in the United States.

11:46:53  15      It also appears to this Court that you were and are well

16  educated and employable with excellent opportunities.

17      The Court did not find any circumstances that presented any

18  challenges for you as a child.  Your parents were involved in

19  your life and they gave you opportunities to be successful in

11:47:11  20  life.

21      The Court also notes that from the representations that

22  have been provided that you ceased participation in the scheme,

23  from what I believe, before law enforcement was involved and you

24  stopped communicating with your co-defendants.  These all appear

11:47:27  25  to be mitigating circumstances.

1    Next, the Court transitions to the nature and circumstances
2    of the offense.  You were involved in a scheme to bribe Amazon
3    employees and contractors in exchange for information which is
4    of advantage to third-party sellers on the Amazon Marketplace.
11:47:46    5    You also engaged other Amazon employees to accept bribes.  These
6    were all aggravating circumstances.

7    The Court also looks at the need for this sentence to
8    reflect the seriousness of the offense.

9    Now, the government has represented and the Court has read
11:48:02    10    through the details of your specific activity and the activities
11    of the co-defendants, but you're being sentenced on what you
12    did.  The scope of the harm to Amazon particularly is emphasized
13    in the communication from the Amazon representative or lawyer
14    that the scope of the harm was massive and impossible to
11:48:22    15    calculate, and the reputational damage was harmful, also, to
16    third parties involved.

17    The Court next needs to look at the need to promote respect
18    for the law and provide just punishment.  Now, the Court looks
19    specifically at the fact of how you engaged in this crime.  You
11:48:43    20    used personal relationships with former colleagues and used
21    knowledge of Amazon's confidential internal processes and used
22    those procedures to assist you in accomplishing and achieving
23    your goals and the goals of the other individuals involved in
24    this scheme.

11:49:02    25    The Court also needs to impose a sentence to afford

adequate deterrents to criminal conduct.  As you heard from

counsel for the government, there's two different types of

deterrents.  There's specific deterrents in terms of needing to

impose a sentence so that you will not be involved in this type

11:49:19  of activity again, and there's general deterrents so that it

sends a clear message to anyone else out in the planet, in the

marketplace, or in the community that believe that this type of

conduct can be accepted and tolerated in our system of justice,

and that they will understand that there will be punishment for

11:49:38  involvement in these types of schemes.

The Court also needs to impose a sentence to protect the

public from further crimes by yourself.  Now, the government

suggests that if you return back to your country, you may

continue in this activity.  I don't know that.  It would appear

11:49:54  to this Court the fact that you've lived a law-abiding life up

to this point in time that concern about protecting the public

should not be a significant concern.  And based upon what I've

seen and read about you, it would appear that this would be your

only contact with the justice system.

11:50:10  The Court also looks at the need to give you an opportunity

for education, training, or treatment.  I don't see that that's

a significant factor in my sentence as you are well educated.

There's no indication of any addiction or association with

illegal substances or alcohol.  And there's no identification of

11:50:29  any specified treatment that would be necessary or appropriate,

1    so the Court doesn't find that to be a major or significant

2    factor.

3         Last, the Court needs to consider the avoidance of

4    sentencing disparity.  I've received no information which would

11:50:44    5    show that any sentence that would be recommended by the parties,

6    has been recommended by the parties, or could be imposed by this

7    Court would cause sentencing disparity, so that's, again, a

8    less-considered factor by this Court.

9         Now, having looked at all these characteristics and

11:51:02    10    factors, the Court will first place you on a three-year term of

11    supervised release.  Please understand you'll be subject to the

12    standard and special conditions of supervised release exactly as

13    stated in that document without variance.

14         The Court also recognizes that the presentence report calls

11:51:20    15    for a fine in this matter.

16         And the question the Court has is, is restitution going to

17    be requested by counsel for the government?

18         MR. MANHEIM:  No, Your Honor, no request for

19    restitution.

11:51:30    20         THE COURT:  All right.  That being the case, the Court

21    will impose a fine as requested in the amount of $50,000.

22         The Court also imposes the special assessment in the amount

23    of $100, and that's due immediately.

24         Having imposed all the other conditions, the only remaining

11:51:46    25    issue is custodial time.

1       Now, sir, the Court looked at what you did and the

2  complexity of the scheme that you were involved in.  Now, you

3  come to the Court and say, essentially, through your lawyer, in

4  your own words, this was ignorance of the law, I didn't know

11:52:02  5  what I was doing was wrong.  But, sir, at some point in time the

6  light had to come on to let you know that what you were doing

7  was illegal.  You were contacting employees of Amazon.  You were

8  paying money for the information that you were receiving.  And

9  this was all organized activity.  In some ways it could be

11:52:25  10  characterized as modern-day organized crime.  It was you, other

11  individuals, involving yourselves in corruption, deceit, and

12  direction with bribes being paid.  In some ways, sir, you

13  probably and may have been responsible solely or collectively

14  with causing other individuals to be attracted by a bribe and

11:52:53  15  feeling that this is a way to get a little bit of money, a way

16  to get a little bit ahead.  So you may have lured people who

17  were innocent just for the attraction of money.

18       Now, sir, it would be quite easy to say, well, Amazon is a

19  big company.  They've got billions of dollars.  Whatever I take,

11:53:11  20  whatever I steal, even if it's only $10,000, is of no

21  consequence or significance.  But this system does not work like

22  that.

23       Sir, you did not have a license to steal from Amazon.  You

24  didn't have a license to bribe any other individuals or to

11:53:29  25  engage in manipulation of the system as you did.  It was wrong,

1   you had to know it was wrong, and when that light did come on,

2   you clearly knew it was wrong, and you clearly have had the

3   opportunity to reflect upon what you've done.

4       Now, the government characterizes what you did as greed.  I

11:53:51   5   don't know why you committed this criminal activity.  In some

6   cases, the Court poses a question to a defendant to say, why did

7   you do this?  If it wasn't greed, what was the motivation?  Why

8   were you involved in this type of activity in the first place?

9       So, sir, I'm not asking you to answer that question, it's a

11:54:12   10   rhetorical question because, to be honest, sir, greed had to be

11   a motivator, an easier way for a pathway to more money, to more

12   income, to gain some of this dream that you were talking about.

13   The dream didn't have to equate by being achieved by illegal

14   conduct.

11:54:32   15       Whether you were influenced by other people or not, the

16   outcome is still the same, you were stealing what wasn't yours,

17   you were engaged in illegal conduct which should not have been

18   engaged in, in the first place, and there has to be

19   consequences.

11:54:48   20       Now, your lawyer suggested to the Court that basically home

21   detention is the proper remedy.  Well, sir, what message would

22   that send to other people?  I can be involved in manipulation of

23   these type of systems to the tune of $100,000 and my punishment

24   is to stay home.

11:55:07   25       Sir, we're in the middle of a COVID pandemic.  Many

employees have to stay home and have been home for almost two

years.  So what message does that send out to the general

public?  And, yes, this is a question of general deterrents.

What message do I send to the public, to other people of like

11:55:31    mind to think that this is okay, that this is tolerable and the

only consequence is stay home, do no evil.  Sir, that can't be

the message that goes out to the public, and it can't be the

message that I send back to you as well.  So I think the

appropriate remedy in this case is a term of 10 months in

11:55:55    custody.

Now, your lawyer's requested Terminal Island, but because

of the 10-month duration, I don't have any objection if your

lawyer requests through you to serve this at the Federal

Detention Center.

11:56:06    So, Counsel, do you have a specific request, either

Terminal Island or the detention center?  Oftentimes sentences

that are less than one year, the detention center can

accommodate that duration of a sentence.  I can't guarantee

that, it's merely a recommendation.  So if you wish to consult

11:56:26    with your client, I'll be happy to include that in the

recommendation from this Court.  So if you wish to consult with

your client.

(Off the record.)

MR. KOOSHKI:  Your Honor, if we can, we'd like to

11:56:40    consider the detention center option.

1    THE COURT:  All right.  The Court will include that as

2  a recommendation.

3    MR. KOOSHKI:  Okay.

4    THE COURT:  Now, please understand, sir, this is

11:56:47  5  merely a recommendation.  If for some reason the Bureau of

6  Prisons decides to send you to another facility or another

7  location, that's within the power that they have.  So I don't

8  want you to think if they send you someplace else that they're

9  violating an order of the Court.  I cannot control that.

11:57:06  10    I've taken into consideration the fact of the impact that

11  this is going to cause upon your parents and the fact that you

12  have a special diet.  The special diet can be an accommodation

13  that can be made at the detention center for religious purposes

14  and religious reasons.  The fact that this may have a financial

11:57:24  15  impact upon your parents, I don't have any information which

16  would show that it would be consistent with the guidelines that

17  that should be the basis for this Court to provide a variance.

18  I've considered your lawyer's recommendations in the overall

19  sentence that's been imposed, so I have factored that in to some

11:57:44  20  degree, Counsel, but not to the extent that you've requested

21  this Court for a term of no imprisonment.

22    Now, sir, I want you to pay close attention as I give you

23  your rights on appeal; otherwise, I believe this sentence as

24  imposed is reasonable and sufficient, but no more than necessary

11:58:01  25  to accomplish the objectives of sentencing.

1       So, Mr. Manheim, please wait until I finish the advice of

2  rights.

3       Sir, it's my understanding that under paragraph 16 of the

4  Plea Agreement, you waived your rights on appeal.  Any rights

11:58:13  5  you had on appeal are exactly as stated in that document.

6       In addition to those rights, I also wish to advise you, you

7  have the right to challenge your lawyer's effectiveness if you

8  believe that that's appropriate.

9       If you wish to appeal the sentence, it's very important

11:58:26  10  that you tell your lawyer that's exactly what you wish to do.

11  He can explain to you any issues that are appealable and any

12  issues that might survive.

13       Now, if you wish to appeal the sentence and cannot afford

14  the filing fee for the Court of Appeals, you can ask me to waive

11:58:43  15  that and I will direct the court clerk to prepare and file a

16  notice of appeal at your request at no cost to you.

17       Please understand, any notice of appeal must be filed

18  within 14 days of the entry of judgment.

19       And lastly, the waiver does not preclude you from bringing

11:58:58  20  an appropriate motion pursuant to Title 28, United States Code

21  Section 2241, to address the conditions of your confinement or

22  the decisions of Bureau of Prisons regarding the execution of

23  your sentence.

24       Do you understand each of these rights, sir?

11:59:15  25       THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Counsel may present the judgment first to

2    counsel for the defendant and then to probation.

3        MR. MANHEIM:  Thank you, Your Honor.

4        THE COURT:  And, Counsel, just to clarify, I'll permit

12:00:00    5    your client to self-report.

6        I trust there's no objection by counsel for the government.

7        MR. MANHEIM:  No objection, Your Honor.

8        THE COURT:  Also, you'll be notified -- is it by

9    probation or by the marshals?

12:00:09    10    PROBATION OFFICER:  By probation.

11    THE COURT:  All right.  You'll receive notice from

12    probation as to when your sentence begins.

13    And in allowing you to self-report, do I have your solemn

14    oath and promise that you will report as directed upon

12:00:21    15    notification by the probation department?

16    THE DEFENDANT:  Yes, Your Honor.

17    THE COURT:  All right.  That will be permitted.

18    MR. KOOSHKI:  Your Honor, I have one question with

19    respect to the fine of -- the $50,000 fine imposed.

12:02:00    20    THE COURT:  Yes.

21    MR. KOOSHKI:  What would -- could we request that

22    defendant have a 30-day time period to submit that fine?

23    THE COURT:  Yes.

24    MR. KOOSHKI:  Thank you.

12:02:13    25    THE COURT:  And if he needs to make alternative

1    arrangements, he can discuss that matter with probation as far

2    as setting up time payments or the actual payment of that sum.

3              MR. KOOSHKI:  Thank you, Your Honor.

4                        (Off the record.)

12:02:35    5    THE COURT:  Counsel for the defendant, I trust that

6    you've reviewed the judgment?

7              MR. KOOSHKI:  I have, Your Honor.

8              THE COURT:  And does it comport with the Court's oral

9    ruling?

12:02:42   10    MR. KOOSHKI:  It does, Your Honor.

11             MR. MANHEIM:  Your Honor, may I approach?

12             THE COURT:  You may.

13        Counsel for the government, are you moving to dismiss

14   Counts 2 through 9?

12:03:22   15    MR. MANHEIM:  Yes, Your Honor.

16             THE COURT:  I trust there's no objection?

17             MR. KOOSHKI:  No objection, Your Honor.

18             THE COURT:  Counts 2 through 9 will be dismissed.

19        Counsel, the Court didn't articulate this in open court,

12:04:14   20   but the judgment reflects the Court's intention, and that is

21   that the interest on the fine is waived.

22        Otherwise, I have reviewed the judgment, it does reflect

23   the Court's oral ruling, and I've signed it.

24        Mr. Kadimisetty, good luck to you, sir.

12:04:41   25   This concludes this proceeding.

1          We'll be in recess.

2                  MR. MANHEIM:  Thank you.

3                  THE CLERK:  Please rise.

4                      (Proceedings adjourned 12:04 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    C E R T I F I C A T E


            I, Marci E.C. Chatelain, CCR, RPR, RMR, CRR,
Court Reporter for the United States District Court in the
Western District of Washington at Seattle, do hereby certify
that I was present in court during the foregoing matter and
reported said proceedings stenographically.
            I further certify that thereafter, I have
caused said stenographic notes to be transcribed under my
direction and that the foregoing pages are a true and accurate
transcription to the best of my ability.



        Dated this 25th day of February 2022.



                /S/  Marci E.C. Chatelain

                Marci E.C. Chatelain, CCR, RPR, RMR, CRR
                Federal Court Reporter